IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KENNETH TAYLOR, AB7038, | ) | |
| Petitioner, | ) ) | No. C 12-0376 CRB (PR) |
| vs. | ) ) | ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS |
| R.E. BARNES, WARDEN, | ) ) | |
| Respondent. | ) ) ) | (Docket # 23) |

Petitioner, a state prisoner at the California Medical Facility (CMF), seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging a conviction and sentence from Alameda County Superior Court. He also seeks appointment of counsel and discovery. For the reasons set forth below, Petitioner's requests for discovery, appointment of counsel and a writ of habeas corpus are denied.

**STATEMENT OF THE CASE**

Petitioner was convicted by a jury of two counts of second degree robbery. In a bifurcated proceeding, the court found true allegations that Petitioner had suffered nine prior convictions, including a prior felony strike conviction. On December 4, 2009, Petitioner was sentenced to 15 years in state prison.

Petitioner unsuccessfully appealed his conviction to, and unsuccessfully sought habeas relief from, the California Court of Appeal. The Supreme Court of California denied review and, on November 16, 2011, denied his final petitions for state habeas relief.

On January 24, 2012, Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in this Court. Per order filed on June 5, 2012, the Court found that the petition stated cognizable claims under § 2254, when liberally construed, and ordered Respondent to show cause why a writ of habeas corpus should not be granted. After receiving several extensions of time, Respondent filed an answer to the petition on November 1, 2012. On December 17, 2012, Petitioner filed a traverse to Respondent's answer.

On May 8, 2012, Petitioner filed a motion for appointment of counsel. Per order filed on June 5, 2012, the Court denied the motion without prejudice. Petitioner renewed the motion for appointment of counsel on January 31, 2013.

On June 29, 2012, Petitioner filed a request for discovery, which the Court denied without prejudice on July 11, 2012. Petitioner renewed his request for discovery on November 19, 2012 and, per order filed on November 21, 2012, the Court requested Respondent file a response to the request. On January 17, 2013, Respondent filed an opposition to the request for discovery.

## STATEMENT OF THE FACTS

The California Court of Appeal summarized the facts of the case as follows:

> On February 19, 2009, the Circuit City store in Emeryville was holding a liquidation sale. At approximately 6:14 p.m., Edgar Bermeo was on duty as the sales manager and Michael Miller as the loss prevention officer. Bermeo heard an alarm go off in the camera department, which indicated that someone had touched a merchandise display in a manner that disconnected a cable that links the merchandise to an alarm box. Initially Bermeo was not concerned by the alarm because alarms frequently sounded when

2

customers would innocently pick up a piece of displayed merchandise. As a manager, it was Bermeo's duty to deactivate the alarm.

Just after Bermeo had walked the approximately 50 feet from where he was standing to the camera department and turned off the alarm, a female customer told Bermeo that [Petitioner] had just taken a camera lens. Bermeo also noticed that a camera lens was missing from the display. When the customer pointed out [Petitioner], Bermeo saw that he was about 50 feet away and was "walking pretty calm" towards the exit of the store. [Petitioner] walked past the two open cash registers without stopping. At this point, Miller was standing about five feet from [Petitioner] as [Petitioner] made his way to the exit. Bermeo yelled to Miller, telling him to stop [Petitioner] because "he just took a lens." Before Miller could react, [Petitioner] ran out the door.

Bermeo and Miller immediately gave chase. Miller called 911 as he and Bermeo ran out of the store, and Miller stayed on the phone with the 911 operator as they chased [Petitioner]. Pursuing [Petitioner], Bermeo and Miller turned left when they exited the store and ran toward Powell Street. [Petitioner] ran around the corner of the building, then ran across Powell Street towards a Denny's restaurant. It was dark, and Powell Street was heavily trafficked. [Petitioner] was running at a quick pace and did not use the crosswalk as he ran across Powell Street. Bermeo and Miller were delayed 20 to 25 seconds in crossing Powell Street due to the traffic. [Petitioner] ran by the Denny's restaurant and behind a Well[s] Fargo building, in a very dark area, and Bermeo and Miller lost sight of him. Bermeo "figured I lost him since I lost view of him, so I stopped running and just started walking," still "looking for him." After an interval which Bermeo testified was "less than a minute" and Miller thought was "about maybe a good ... minute and a half to two minutes," they spotted [Petitioner] walking along Christy Avenue "very normally, like a person just walking across the parking lot."

Bermeo and Miller then resumed the chase and [Petitioner], seeing them, resumed running from them. [Petitioner] sprinted across Christy Avenue, then across Powell Street, up an overpass on Powell Street, running on a narrow sidewalk on the side of the road. Bermeo and Miller gained ground on [Petitioner] as they pursued him up the overpass on Powell Street, getting to within about five yards of him. As they were about halfway up the incline portion of the overpass [Petitioner] began walking in a sidestep, turning his body to face Bermeo. With his right hand in his jacket pocket, [Petitioner] said to Bermeo, "I'll shoot you. I'll shoot you." Miller heard [Petitioner] say, "Stop chasing me, or I will shoot you." Bermeo "stopped in [his] tracks." He was "scared."

Bermeo and Miller then reduced their pace and allowed the distance between them and [Petitioner] to increase. When they

3

    reached the apex of the overpass, approximately 20 to 25 yards behind [Petitioner], Bermeo saw a police car appear. Emeryville Police Officer Spencer Giddings, who was driving the car, passed [Petitioner], then made a U-turn in the middle of the overpass and returned to apprehend [Petitioner]. Just before the officer arrived, both Bermeo and Miller saw [Petitioner] throw an object over the side of the overpass.  Before detaining [Petitioner], Giddings also saw him take some objects from his pocket and throw them over the edge of the overpass.  The three later searched the area underneath that portion of the overpass and found the camera lens as well as a computer mouse, a USB cable and two packages of batteries. Giddings' search of [Petitioner] upon his arrest produced a carpenter's knife, a USB cable, a memory card and a package of batteries.

    The testimony at trial also included a description of events recorded on the store's surveillance camera, including [Petitioner] picking up a lens on display, using a "knife-like object" from his pocket in a cutting motion, apparently cutting the security cable, returning the lens to the display but in approximately 30 seconds returning to the display, picking up the lens and placing it in his coat pocket and walking towards the exit.  The video also showed [Petitioner] running out the front door, pursued by Bermeo and Miller.

    In an amended information, [Petitioner] was charged with two counts of second degree robbery (Pen.Code, § 211).  The information also alleged 11 prior convictions, including one prior strike conviction (Pen.Code, §§ 667, subd. (e), 1170.12, subd. (c)) and five prison priors (Pen.Code, § 667.5, subd. (b)).  A jury found [Petitioner] guilty of both robbery counts, and in a bifurcated proceeding the court found nine prior convictions true, including the prior strike conviction, which the court refused to dismiss pursuant to Penal Code section 1385.  [Petitioner] was sentenced to 15 years in prison, and timely appealed.

People v. Taylor, No. A127175, 2011 WL 1553877, at *1-2 (Cal. Ct. App. April 6, 2011).

## STANDARD OF REVIEW

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the

claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's

holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

## CLAIMS & ANALYSIS

Petitioner raises four claims for relief under § 2254: (1) suppression of evidence, (2) failure to exclude evidence, (3) instructional error and (4) ineffective assistance of appellate counsel. The claims are without merit.

1. Suppression of Evidence

Petitioner claims that he was denied due process because the prosecution suppressed material evidence, namely the CCTV surveillance video from Circuit City and the testimony of two witnesses, Ms. Rheem (operations manager of Circuit City) and Kitty Nguyen (Circuit City employee). Pet., Ex. A at 1-4, 8.

In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. The Supreme Court since has made clear that the duty to disclose such evidence applies even when there has been no request by the accused, United States v. Agurs, 427 U.S. 97, 107 (1976), and that the duty encompasses impeachment evidence as well as exculpatory evidence, United States v. Bagley, 473 U.S. 667, 676 (1985). Evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Cone v. Bell, 556 U.S. 449, 469-70 (2009). "A reasonable probability does not mean that the defendant 'would more likely than not have received a different verdict with the evidence,' only that the likelihood of a different result is great enough to 'undermine confidence in the outcome of the trial.'" Smith v. Cain, 132 S. Ct. 627, 630 (2012) (quoting Kyles

v. Whitley, 514 U.S. 419, 434 (1995)).  But the mere possibility that undisclosed information might have been helpful to the defense, or might have affected the outcome of the trial, is not enough for relief under Brady.  United States v. Olsen, Nos. 10-36063 & 10-36064; slip op. at 21-22  (9th Cir. Jan. 8, 2013).

In sum, for a Brady claim to succeed, (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or impeaching; (2) that evidence must have been suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice[1] must have ensued.  Banks v. Dretke, 540 U.S. 668, 691 (2004); Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

Petitioner is not entitled to federal habeas relief on his Brady claims. Petitioner's claim regarding the video fails because he does not show that the video was exculpatory or otherwise favorable to him.  And even if the video was favorable, Petitioner does not show that he was prejudiced.  Petitioner's claim regarding Ms. Rheem's and Kitty Nguyen's testimony also fails because he does not show that their testimony would have been exculpatory or otherwise favorable to him.

With regards to the surveillance video, Bermeo, Miller and Officer Giddings each viewed the video and testified that the video showed Petitioner cutting the security cable using a knife-like object, picking up the lens, taking it and walking towards the exit.  1RT 107-08; 3RT 295, 436-37.  Petitioner speculates that the video "may well have also captured  [Petitioner] behaving in a manner consistent with someone who suffers from 'paranoid schizophrenia.'" Pet., Ex. A at 4.  But there is no evidence in the record that the video actually showed any alleged schizophrenic behaviors or, put differently, that the contents

---

[1]For the purpose of Brady, the terms "material" and "prejudicial" have the same meaning.  United States v. Kohring, 637 F.3d 895, 902 n.1 (9th Cir. 2011).

7

of the video were in any way favorable to Petitioner.  Petitioner's mere speculation as to what the video may have shown is not enough to establish materiality under Brady.  See United States v. Olsen, slip op. at 21-22.

Even if the video showed some sort of schizophrenic behavior on the part of Petitioner, there is no indication of how such evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.  See Kyles v. Whitley, 514 U.S. 419, 435 (1995).  Petitioner's claim is without merit because it is well established that whether a "reasonable probability" exists may not be based on mere speculation without adequate support.  See Wood v. Bartholomew, 516 U.S. 1, 6-8 (1995).

Petitioner's speculative claim regarding Ms. Rheem's and Kitty Nguyen's testimony fails for essentially the same reasons as his speculative claim regarding the video – there is no evidence that either Ms. Rheen or Ms. Nguyen would have provided exculpatory or otherwise favorable testimony to Petitioner.  Ms. Rheem was identified as an operations manager at Circuit City who may have been able to get a copy of the surveillance video.  2RT 232.  But there is no indication that (1) Ms. Rheem actually got the video, (2) that she watched the video, or (3) that she saw something in the video that would be beneficial to Petitioner.  Kitty Nyguen was identified as a Circuit City employee present during Petitioner's offense who subsequently positively identified him. 1 RT 99.  The testimony at trial regarding Kitty Nyguen's identification was stricken from the record, but shows that her testimony would not have been favorable to the defense.  Id.  Petitioner sets forth no evidence to the contrary.

Petitioner is not entitled to federal habeas relief on either of his Brady claims.  Under the circumstances, it simply cannot be said that the state courts' summary rejection of the Brady claims was objectively unreasonable.  See

Plascencia v. Alameida, 467 F.3d 1190, 1197-98 (9th Cir. 2006) (applying 28 U.S.C. § 2254(d)).

### 2. Failure to Exclude Evidence

Petitioner claims that the trial court failed to exclude a statement given to Bermeo by an "unknown Asian" woman in violation of his Sixth Amendment right to confront and cross-examine witnesses against him. Pet., Ex. A at 6.

The testimony at issue was given to Bermeo the night of the robbery, when the unknown Asian woman said, "that guy . . . just stole the lens that was alarming," pointing to Petitioner. 1RT 22-25 (Sept. 9, 2009). Petitioner moved to exclude this testimony before trial, claiming that it constituted hearsay and violated the Confrontation Clause. Id. But the trial court allowed the prosecution to introduce the statement for "the effect on the listener" and gave the following limiting instruction to the jury:

> During the trial, certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other. Edgar Bermeo testified that an unknown female pointed in the direction of the defendant and stated that he had just taken a camera lens or words to that effect. This evidence was admitted only to explain why Edgar Bermeo ran out of the store chasing the defendant and not for any other reason. You may not use the statement of the unknown female as evidence that the defendant did, in fact, steal the camera lens.

4RT 635.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. This right applies to all "testimonial" statements, whether sworn or unsworn, and to both in-court testimony and out-of-court statements introduced at trial. Crawford v. Washington, 541 U.S. 36, 51-52 (2004). But, "[t]he Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the

9

matter asserted." Id. at 59 n.9.  In Crawford, the Supreme Court held that testimonial statements are not admissible unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination.  Id. at 68.

Petitioner's Confrontation Clause claim fails because the Asian woman's statement was not offered for the truth of the matter asserted; rather, it was offered to explain the basis of Bermeo's chasing Petitioner out of the store.  See Moses v. Payne, 555 F.3d 742, 755-56 (9th Cir. 2008) (no Confrontation Clause issue where social worker reported spousal abuse under mandatory reporting law and statements were introduced for non-hearsay purpose of explaining why she contacted authorities).  And in view of the limiting instruction given, as well as the substantial evidence of Petitioner's guilt, it cannot be said that the admission of the Asian woman's statement had a substantial and injurious effect on the jury's verdict.  See Brecht, 507 U.S. at 637; see also Richardson v. Marsh, 481 U.S. 200, 211 (1987) ("juries are presumed to follow their instructions").

Petitioner is not entitled to federal habeas relief on his Confrontation Clause claim.  It simply cannot be said that the state courts' summary rejection of the claim was objectively unreasonable.  See Plascencia, 467 F.3d at 1197-98 (applying 28 U.S.C. § 2254(d)).

3. Instructional Error

Petitioner claims that the trial court's failure to instruct the jury sua sponte regarding the asportation element of the offense of robbery violated his due process rights.  Pet., Ex. A at 12.  According to Petitioner, the trial court should have instructed the jury that Petitioner was not guilty of robbery if he had reached a place of temporary safety prior to threatening Bermeo and Miller.  See id.

To obtain federal habeas relief for error in the jury charge, petitioner must show that the error "so infected the entire trial that the resulting conviction

10

violates due process." Estelle v. McGuire, 502 U.S. 62, 72 (1991).  The error may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  Id.  Petitioner also must show actual prejudice from the error, i.e., that the error had a substantial and injurious effect or influence in determining the jury's verdict, before the court may grant federal habeas relief.  Calderon v. Coleman, 525 U.S. 141, 146 (1998) (citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

   A state trial court's failure to give an instruction does not alone raise a ground cognizable in federal habeas corpus proceedings.  Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988).  Due process does not require that an instruction be given unless the evidence supports it.  See Hopper v. Evans, 456 U.S. 605, 611 (1982); Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005).  The defendant is not entitled to have jury instructions raised in his or her precise terms where the given instructions adequately embody the defense theory.  United States v. Del Muro, 87 F.3d 1078, 1081 (9th Cir. 1996); United States v. Tsinnijinnie, 601 F.2d 1035, 1040 (9th Cir. 1979).  Furthermore, the omission of an instruction is less likely to be prejudicial than a misstatement of the law.  Walker v. Endell, 850 F.2d 470, 475-76 (9th Cir. 1987).  A habeas petitioner whose claim involves a failure to give a particular instruction, as opposed to a claim that involves a misstatement of the law in an instruction, bears an "especially heavy burden."  Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997) (quoting Henderson v. Kibbe, 431 U.S. 145, 155 (1977)).

   The California Court of Appeal rejected Petitioner's instructional error claim.  First, the court found that the trial court's instructions were accurate.  People v. Taylor, 2011 WL 1553877, at *3.  The court explained that the trial court's instructions were taken in large part from CALCRIM No. 1600, correctly

defining the elements of robbery, and that the trial court added, "the force or fear may occur at the time of the taking of the property or while the defendant is attempting to retain <u>or escape</u> with the property, even if the defendant peacefully acquired the property." <u>Id.</u> (internal quotations omitted) (emphasis in original). The trial court also instructed on the lesser offense of larceny, and the appeal court noted that "if the jury did not find that defendant's threat was made while attempting to retain or escape with the property, under the instructions there was no basis on which it could have found him guilty of robbery." <u>Id.</u>

Second, the California Court of Appeal found that there was insufficient evidence to support a pinpoint instruction on the asportation element of robbery. <u>Id.</u> at *4. The court explained:

> Whether a defendant has reached a place of temporary safety may be a question of fact for the jury, but the determination is based on objective criteria. (<u>People v. Johnson</u> (1992) 5 Cal.App.4th 552, 559–560.) Like all other matters, there must be some evidence to justify its submission to the jury. (5 Witkin & Epstein, Cal.Criminal Law (3d ed. 2000) Criminal Trial, § 607, pp. 866–867.) There is no doubt that from the time Bermeo shouted to stop defendant before he ran out of the store until he was apprehended on the overpass a short time later, Bermeo and Miller were in hot pursuit. While they lost sight of defendant for a short period, not more than two minutes, defendant never got beyond the neighborhood of the store, never got more than a block or so from the pursuing store employees, never gave up possession of the stolen merchandise, and never eluded his pursuers. At trial, defendant did not suggest that he had reached a place of safety or that asportation of the stolen equipment had terminated before he reached the overpass; his argument to the jury was that he never made any threats to Bermeo or Miller. There is no case that suggests that momentarily losing sight of a fleeing suspect in the course of a chase means that the suspect has reached a place of temporary safety sufficient to bring the commission of a robbery to an end. (See e.g., <u>People v. Salas</u> (1972) 7 Cal.3d 812, 820–824; <u>People v. Flynn</u>, <i>supra</i>, 77 Cal.App.4th at p. 772; <u>People v. Guzman</u> (1996) 45 Cal.App.4th 1023, 1026, 1028; <u>People v. Young</u> (1992) 11 Cal.App.4th 1299, 1306–1307; <u>People v. Johnson</u>, <i>supra</i>, 5 Cal.App.4th at pp. 561–562.) "[T]o maintain that [defendant] had reached a place of safety, severing [his] subsequent conduct from the

12

> robbery, is artificially to bifurcate, in disregard of the evidence, the conduct of [defendant]." (People v. Ketchel (1963) 59 Cal.2d 503, 525, disapproved on other grounds in People v. Morse (1964) 60 Cal.2d 631, 649).

Id.

Finally, the California Court of Appeal found that, even if it was error not to give the pinpoint instruction sua sponte, the error was harmless because "there is no possibility that such an instruction would have changed the outcome of the trial," because of the overwhelming evidence against Petitioner. Id. at *5.

The California Court of Appeal's rejection of Petitioner's instructional error claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). The state appellate court reasonably determined that the evidence did not support the instruction, let alone require that the trial court give it sua sponte. See Hopper, 456 U.S. at 611 (due process does not require an instruction be given unless the evidence supports it). The court also reasonably determined that, even if there was an instructional error, it was harmless because the evidence that Petitioner was fleeing the scene with stolen property when he threatened to shoot his pursuers on the overpass was overwhelming. See Brecht, 507 U.S. at 637.

Petitioner is not entitled to federal habeas relief on his instructional error claim. It simply cannot be said that the California Court of Appeal's rejection of the claim was objectively unreasonable. See Williams, 529 U.S. at 409.

4.     Ineffective Assistance of Appellate Counsel

Petitioner claims that his appellate counsel rendered ineffective assistance by failing to raise on direct appeal the Brady and Crawford claims raised here. Pet., Ex. A at 16.

Claims of ineffective assistance of appellate counsel are reviewed under

13

the standard set out in Strickland v. Washington, 466 U.S. 668 (1984). Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989). A defendant must show that counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, defendant would have prevailed on appeal. Id. at 1434 n.9 (citing Strickland, 466 U.S. at 694).

Here, Petitioner has not shown that counsel's performance fell below an objective standard of reasonableness. Appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant. See Jones v. Barnes, 463 U.S. 745, 751-54 (1983); Gerlaugh v. Stewart, 129 F.3d 1027, 1045 (9th Cir. 1997); Miller, 882 F.2d at 1434 n.10. The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. See Miller, 882 F.2d at 1434. Petitioner's appellate counsel's failure to raise the Brady and Crawford claims raised here did not fall below an objective standard of reasonableness because, as discussed earlier, those claims have no merit. And for essentially the same reason, there is no reasonable probability that, if counsel had raised those claims, Petitioner would have prevailed on appeal. See id. ("Appellate counsel will frequently remain above an objective standard of competence . . . and have caused her client no prejudice . . . because she declined to raise a weak issue."). Petitioner is not entitled to federal habeas relief on his claim of ineffective assistance of appellate counsel.

**REQUEST FOR DISCOVERY**

Petitioner requests the contact information for former Circuit City store employees Kitty Nguyen, Ms. Rheem, Michael Jackson and Todd Blank, as well as any statements made to Emeryville Police officers on or about February 19 and March 3 and 5, 2009. He also requests a copy of the 911 dispatch tape and all

police radio communications related to his case on or about February 9, 2009. Petitioner contends that the former Circuit City employees "can independently 'authenticate' that the CCTV video footage actually exist[s]," that "Petitioner was seen in the video," and that their testimony may establish "out-of-court misconduct by law enforcement." Docket #17 at 3. He further contends that Kitty Nguyen "can give 'potentially exculpatory' testimony that Petitioner was not seen in the store at the time of [the] incident." Id.

      Petitioner's request for discovery is DENIED. A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course. See Bracy v. Gramley, 520 U.S. 899, 904 (1997). Rule 6(a) of the Federal Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254, provides that a "judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." In deciding whether a petitioner is entitled to discovery under Rule 6(a), the court must identify the essential elements of the underlying claim and determine whether petitioner has shown "good cause" for appropriate discovery to prove his claim. See Bracy, 520 U.S. at 904. Good cause for discovery under Rule 6(a) is shown "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" Id. at 908-09 (quoting Harris v. Nelson, 394 U.S. 286, 299 (1969)). For example, in Bracy, the Supreme Court found that the petitioner established good cause for discovery where he provided specific allegations lending support to his claim that the trial judge was actually biased in his case. See id. at 909; see also McDaniel v. United States District Court (Jones), 127 F.3d 886, 888 (9th Cir. 1997) (good cause for discovery found where petitioner's claims did not appear purely speculative or without any basis

15

1  in record, each claim included factual allegations and statement of exhaustion,
2  and materials sought through discovery were not available from petitioner's
3  appellate counsel, who had destroyed entire file).

4  Petitioner has not shown good cause for discovery under Rule 6(a)
5  because he has failed to provide specific allegations supporting his Brady claims.
6  As discussed earlier, Petitioner's Brady claims (and now request for discovery to
7  support said claims) are purely speculative.  There is no evidence or indication in
8  the record that any of the former Circuit City employees viewed the video or
9  could recover the video, or could provide exculpatory or otherwise beneficial
10 testimony for Petitioner.  Rather, the evidence in the record, including the sworn
11 testimony, subject to cross-examination, of Bermeo (sales manager), Miller
12 (security guard) and Officer Giddings, suggests that the video is inculpatory.  See
13 1RT 103-105; 3RT 295, 433, 436-37.  The record also shows that Kitty Nguyen
14 could provide additional inculpatory testimony.  1RT 99-100 (showing testimony
15 related to Nguyen's positive identification of Petitioner, while stricken from the
16 record, further incriminates Petitioner).  And there is no showing whatsoever as
17 to why the 911 dispatch tape, which was played during his trial, is essential now.

## MOTION FOR APPOINTMENT OF COUNSEL

19 Petitioner's renewed motion for appointment of counsel (docket # 23) is
20 DENIED.  See Knaubert v. Goldsmith, 791 F.2d 722, 728 (9th Cir. 1986) (unless
21 an evidentiary hearing is required, the decision to appoint counsel in habeas
22 corpus proceedings is within the discretion of the district court).  Petitioner
23 adequately presented his claims for relief in the petition and adequately
24 responded to Respondent's Answer in his traverse.  Accord Bashor v. Risley, 730
25 F.2d 1228, 1234 (9th Cir. 1984) (although petitioner had no background in law,
26 denial of appointment of counsel is within discretion of district court where

petitioner clearly presented issues in petition and accompanying memorandum).

## CONCLUSION

After a careful review of the record and pertinent law, the Court is satisfied that the petition for a writ of habeas corpus must be DENIED.

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, a certificate of appealability (COA) under 28 U.S.C. § 2253(c) also is DENIED because petitioner has not demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The clerk shall enter judgment in favor of Respondent, terminate all pending motions as moot and close the file.

SO ORDERED.

DATED:   April 19, 2013

CHARLES R. BREYER
United States District Judge

G:\PRO-SE\CRB\HC.12\Taylor, K.12-0376.denial.rev2.wpd